Cleveland JENKINS *v.* STATE of Arkansas

CR 95-418                                                        905 S.W.2d 845

Supreme Court of Arkansas
Opinion delivered September 18, 1995

*Bynum & Kizer, P.A.*, by: *Maxie G. Kizer*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Justice. Cleveland Jenkins was convicted of capital murder and sentenced to life imprisonment without parole for the shooting death of Charles "Chuckie" Lyons. He raises two points on appeal. The first, that there was insufficient evidence of premeditation and deliberation to sustain the verdict, has no merit. The second, that it was error to admit the recording of a 911 emergency call made after the shooting, is procedurally barred.

We affirm.

Mr. Jenkins came to the home of Blanche Murray late on the evening of the shooting. Mrs. Murray's grandson answered the door and said that the caller wished to speak to "Chuckie," a visitor who was asleep in a back bedroom, and went to rouse him. Mrs. Murray was concerned about the lateness of the visit and asked Chuckie if he knew the caller. He responded that he did and went to the door. Mrs. Murray, who had approached the door and looked out, testified that as Chuckie opened the door, she stepped back, and immediately heard gunshots. She called to her daughter, Sonya, who discovered Chuckie lying shot on the front porch, and called 911. Jenkins and another person were identified by name and their car was described during the 911 call. Police officers spotted the car shortly after the report. The car was stopped and Jenkins apprehended after a high speed chase. Officers recovered a nine millimeter semi-automatic pistol which had been thrown from the car during the chase. The crime lab identified the gun as having fired the bullets that killed Lyons.

Lyons was found dead on Mrs. Murray's porch with five "through and through" gunshot wounds, three in his chest and one

each in his wrist and cheek. The medical examiner testified that the wrist wound was consistent with the victim attempting to shield his face, and two of the other wounds were consistent with the victim lying flat on his back when shot. He further testified that one of the bullets severed Lyons' spinal cord, which would have caused him to immediately collapse. Three bullet hulls found on the porch were shown to have been ejected from the weapon recovered during the chase, and a bullet was found embedded in the wall of the house in the area of the porch. Gun powder residue was found on the outer and inner layers of the victim's clothing; results of a gunshot residue test conducted on his hands were negative, and no gun was found at the scene.

After his arrest, Jenkins gave a statement to the police in which he claimed to have shot Lyons in self defense. He first claimed that Lyons pulled a gun, then stated that he did not see a gun but that Lyons reached behind his back. At trial, he testified that he came to the house, not to see Lyons, but to sell a gun to Mrs. Murray's grandson, Johnny. He stated that when Johnny went back into the house to get money for the gun, Lyons came to the door and began cursing and threatening him. He testified that he shot Lyons while they were both in the yard, shooting at each other and dodging, and that he fled the scene because he panicked.

Mr. Jenkins first argues the evidence of premeditation and deliberation is insufficient to sustain the verdict of capital murder. At the close of the State's case, Jenkins' counsel moved for a directed verdict stating, "Specifically, we state that there has been no evidence that the defendant with premeditation and deliberate purpose caused the death of this individual." The prosecution responded, "Mrs. Murray testified that he no more than got out of the door when they started nailing him. They specifically asked for him. They called him outside." At the close of Jenkins' testimony his counsel stated that he renewed the motion "on the same grounds that I made after the State's case."

We find Jenkins' motion at the close of the state's case was sufficiently specific to apprise the trial court of the ground asserted. Indeed, the prosecutor's response indicates that he also knew the objection went specifically to the element of premeditation and deliberation. *See Jones* v. *State*, 318 Ark. 703, 809

S.W.2d 706 (1994); *Daffron* V. *State*, 318 Ark. 182, 885 S.W.2d 3 (1994); *Walker* v. *State*, 318 Ark. 187, 803 S.W.2d 831 (1994).

Jenkins' general renewal on the same grounds at the close of all the evidence was also sufficient to preserve this issue on appeal. *See Durham v. State*, 320 Ark. 689, 889 S.W.2d 470 (1995).

■ As to the merits of Jenkins' argument, it certainly cannot be said that there was a lack of evidence in this case. In fact, the jury had ample circumstantial evidence to support a finding of premeditation and deliberation, including the testimony of the Murrays, the forensic evidence presented, and the conflicting statements given to the police by Jenkins. *See Abdullah* v. *State*, 301 Ark. 235, 783 S.W.2d 58 (1990); *Dansby* v. *State*, 319 Ark. 506, 893 S.W.2d 331 (1995).

■ Jenkins also argues that the trial court erred in admitting into evidence the recording of the 911 emergency call made from the Murray home immediately after the shooting. At trial, he asked that the tape be excluded as hearsay. The trial court admitted the tape as an excited utterance exception to the hearsay rule under Ark. R. Evid. 803(2). However, on appeal Jenkins argues for the first time that the tape should not have been admitted because it was not properly authenticated by the State pursuant to Ark. R. Evid. 901(b)(5), because the voices on the tape were not identified. Since Jenkins has changed the basis of his objection and now makes a different argument from that made at trial, we do not address this point. *See Woodruff* v. *State*, 317 Ark. 585, 856 S.W.2d 299 (1993); *Myers* v. *State*, 317 Ark. 70, 876 S.W.2d 246 (1994).

The entire record has been examined pursuant to Ark. Sup. Ct. R. 4-3(h) for other reversible errors and we have found none.

Affirmed.